The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye, the United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Very well, good afternoon. Please call the first case for order. 19-2536 from the District of Nebraska, Gary Miller v. Union Pacific Railroad Company. All right, Mr. Cavas, we'll hear from you first. Thank you, Your Honor. My name is William Cavas. I'm trial counsel for the plaintiff, Gary Miller. 200 years ago, our founding forefathers could not have imagined an argument being conducted in a fashion such as this, but they did have the great wisdom when they inserted into the Bill of Rights the provision known as the 7th Amendment, protecting the right by jury trial in civil cases, and this has been reaffirmed in FDLA decisions, noting that the FDLA's right to a trial by jury is part and parcel of the remedy. Now, we are here today being able to seek Mr. Miller's ability to present this claim to a jury at trial. Now in this particular case, there are both negligence claims and a claim for strict liability based on a violation of the Code of Federal Regulations, and the trial court improperly dismissed both of them, and with respect to the strict negligence claim, did so believing that the crack operation regulations, that being CFR 49213.135, or 218.105, which requires as a matter of law that a track switch be aligned to mainline travel, and what the court did was take and graft into it a notice requirement that does not appear in the statute. Rather, the court took language from the regulation of the track safety standards passed in 1998 to graft a notice requirement onto the railroad operating practices regulations. Interestingly, the railroad operating regulations wasn't passed until 2008. So the FRA was aware at the time when it passed the Railroad Operating Practices Act, which required that the track be aligned for mainline movement, that it could, as it did with the track safety standards, insert a notice requirement, but it chose not to do so, and notwithstanding that, the court had incorporated that into its ruling. And I think the real issue in this case stems from the fact, understandably, the trial court is troubled, and it's troubled by evidence of criminal activity, and feeling that there's a lack of fairness to hold the railroad responsible for criminal conduct unrelated to its employees. Now, for the purposes of the regulation, and whether or not it's violated, that is unaffected by whether or not there's a criminal act. What really we have to do is analyze this in terms of causation. In other words, assuming the act has been violated, and it's undisputed, it was violated, is there a supervening, intervening cause that cuts off that causal connection? And the court determined in this case it did. And the issue that we have with that is you have no conclusive proof of that occurring. You had circumstantial evidence based on a hearsay statement in an affidavit by the police officer for the Union Pacific Railroad that there had been a theft of some 102 keys from Amtrak. On the other hand, the evidence in the case also suggested that many railroad employees have this key. It is a 102 key, and it is used to unlock and lock all of the mainline switches, and it is a universal key. Well, may I interrupt you, Mr. Kvas? Yes, sir. To ask you simply, I thought that two days earlier an inspector actually looked at this switch, and a day earlier, a train traveled through there. Isn't that circumstantial evidence? It is circumstantial evidence, but my submission is it's circumstantial evidence to be decided by a jury at trial and not the court on summary judgment. For example, there was testimony in the case that the track was used to store maintenance away equipment. In other words, when work is being done on the track, at the end of the day, the crew that operates a maintenance away train that might be carrying ballast or whatever for the track or rails or anchors has to be housed, so it's off mainline tracks during those hours. This track had been used for that, and there is testimony from witnesses that indicate it had been used for that in the past. So this is much like the case of Lavender against Kern decided by the United States Supreme Court, where in that case, they were dealing with the death of an individual who was found on the ground and had an injury to his head, and the question was, the plaintiff's claim was that he was struck by a protruding object from a train. There were no witnesses, and on the other hand, the railroad's contention that the yard was frequented by hobos and that someone had criminally attacked him. In that case, the U.S. Supreme Court said, you get your day at trial. A jury gets to determine what inferences to draw from those facts. What about the facts out there that Judge Colvin's trying to get in? Go ahead, Judge Colvin. Let me take you back to the legal framework that you're asking us to adopt here. On your negligence per se claim, as I understand it, your argument is that the railroad violated the regulation, and therefore, the district court erred in dismissing the claim based on lack of knowledge or excuse. Is that right? That's correct. If that's correct, what do you say would then proceed in the district court? What elements would remain? The elements of negligence that we previously alleged, together with the establishment of the violation and then the railroad's defense that this is criminal activity on which they  Wait a minute. Are we talking about the negligence per se claim now or the second claim, which is just negligence? Right. What I'm urging is it gets reversed and sent back for a trial in both. All right. Well, let's take them one at a time. On the negligence per se claim, your position is they violated the regulation, therefore, you've met certain elements. On that claim, what remains to be tried if you're correct? The issue would then be whether or not the railroad can prove a supervening, intervening cause for a jury at trial. In other words, was that violation the result of criminal activity? That would be the negligence per se issue to be tried at trial then. Well, I've lost you then. I don't follow your position. I thought your position was that the railroad violated the regulation regardless of how the track became misaligned because you were saying they have an absolute duty to keep the track aligned. But now you seem to be saying, no, they don't have such an absolute duty. If they can prove that it was misaligned by a criminal act, then they win. Is that your position then? That's why I draw the distinction. I think the liability attaches immediately with the violation. The question is one of causation and whether or not the act of an intervening third party was the cause. And on that, there is conflicting evidence that requires resolution by a jury at trial. Okay. Go ahead, Judge Benton. Well, I couldn't resist jumping into the Lavender case. I know we're deep in the weeds. Pardon all the puns here. But I know we're deep in the weeds. But the Supreme Court says if you looked at where the male hook struck the victim, the gash in the head, the blood marks, I'm paraphrasing, the height and the swing out of the hook, boy, that's pretty strong circumstantial evidence, isn't it? Well, I would agree with you. We have evidence. Does your case even begin to compare to that? Yes, in terms of the fact that in this case we have evidence, one, that that track was used at times to store maintenance away equipment by Union Pacific employees, that the key that was used, a 102 key, was a key which many, many Union Pacific employees would have access to. So that it's not a mystery. What you have to determine is, is there enough evidence based on that to allow this to go to trial on the basis that someone using a common key, which literally hundreds of railroaders have, was used to open this lock for some purpose. And in addition to that, we've got a further negligence claim as a result of that. That is to say that if this track was never used, if it was obsolete, then the practice is to clamp it. So it cannot be opened. And the practice is also to see that once that track is clamped, you place a different lock, as they did after this accident. They put a maintenance away combination lock on it, so someone would have to call someone with authority before that switch could be opened, as it would appear. All right. Would you care to save any time for a bubble, or do you wish to proceed further with your opening? Nope. I'll reserve the balance of the time. For some reason, the time clock went away when you came up. Oh. All right. Well, you have 4 minutes and 18 seconds remaining. It should be on the bottom row. If it's not on your top row, you could apparently click and pin it. But do you wish to stop with 4.18 remaining? That's fine. All right. Very well, then. Mr. Grams, we'll hear from you. Thank you, Judge Collison, and may it please the court. Courts uniformly hold that FELA provides a fault-based cause of action that sounds in negligence. Mr. Miller argues today that there's no difference between negligence per se, which is liability for an unexcused violation of a statutory duty, and strict liability, which is liability without fault. That's not the law, Judge. The FELA is not an insurance or a worker's compensation statute. Because FELA is liability based on fault, this court should affirm. Union Pacific did absolutely nothing wrong here. Union Pacific set and locked switch 711 for mainline movement. It locked the switch with a padlock. It drove a railroad spike into the ground to prevent the switch rail from moving, and it conducted inspections complying with FRA regulations, confirming the switch was properly lined and locked. As the court just observed, a day before the derailment, a train safely passed over the switch, and Union Pacific offered evidence to the district court that there was no work procedure, dispatch, or further inspection authorized at that switch. After the derailment, a deputized railroad police officer and a UP manager both testified they concluded the relining of the switch was a criminal act. Now, in its order, the district court made several key findings of fact, the undisputed fact, including that the misalignment of switch 711 was, quote, intentionally and unpredictably caused by an unidentified actor, and it affected the condition of the track. Before the district court, Miller did not dispute UP's facts, except to object to them on relevance and related grounds. I point you to the 204 to 209 and 224 to 231 of the appendix on that. Also to argue that it should receive an inference that a Union Pacific employee, instead of a third party, misaligned the switch. How would you describe the difference, Mr. Grahams, between negligence per se and strict liability? Well, Judge, negligence per se requires, A, a regulatory violation, B, that it be unexcused, and C, that the regulation be designed to protect the class involved. Here, there's no dispute of a railroad employee, and that there was causation. There is, in the common law, another element that's not applicable in FELA cases, that the statute has to protect against the harm that is intended or that resulted in the case. We have no dispute that's not involved in a FELA case. That's the Kernan case, but here, you still have to show a violation of the regulation. You have to show that it's unexcused. Suppose the regulation doesn't have a knowledge element. Would that eliminate any knowledge requirement or notice requirement? I think you have to look at the language of each individual regulation. Regulations that have been held, well, statutes that have been held to be strict liability are things like the Safety Appliance Act and the Boiler Inspection Act, now the Locomotive Inspection Act, that use language like, it shall be unlawful for X to happen. You find cases under the Locomotive Act or the Safety Appliance Act where a coupler broke and the breakage right there constitutes the violation. Where is the knowledge element in 218.105? It says that it shall be set for mainline movement. It also says that a railroad or an employee, a listing of individuals that may be involved and may violate the section, that person that does the moving of the switch is responsible for the violation. Mr. Graham, a couple things. First of all, the regulation also says, any person including but not limited to each railroad, railroad officer, supervisor, employee, so the language of the regulation doesn't pin to individual people, that includes the railroad, and also can you reconcile 218.105? Judge Williams? Yes. You're cutting in and out and I'm only hearing about every half of your words, I apologize. All right. I'll go a little bit slower and hope you get them all. Okay. Can you also reconcile 213.5, which has the very words knowledge or notice? Those words are missing from 218.105. Can't we read some import there that those words are missing from this particular regulation? 213.5 applies to track regulations. It's the whole of part 213 and not just the particular section that that notice requirement arises in. This is a later enacted track regulation, 218.105. The district judge had to make sense of both of these regulations together. One of them requires notice for inspecting the switch and one of them on its face doesn't say anything about whether notice is required, it just denotes the position. I think Judge Smith can't properly reconcile those to require that notice be shown in order to show a violation. That's one of our three holdings on... The question is why, I think. Why would we transport a knowledge requirement from a different subpart or a different part of the CFR? Anyway, maybe you've said what you want to say on that. No, Judge, it's because it's a condition affecting the track. This is a later enacted further track regulation. Why did they put it in the railroad operating practices instead of under the track regulations? Do you know anything about the history of that codification? Under the track regulations in part 213, there is an explanation for why the notice requirement is in that section. It explains that the FRA made a judgment that in regulating the entire 200,000 mile rail network, that it was functionally impossible for railroads to be everywhere at all times and to observe every switch 24 hours a day to prevent something like this from occurring. I'm familiar with that. My question was whether you have any sense of why 218.105 regarding the switches was not placed in section 213 if it is really a track safety standard that should be subject to that notice requirement. When the regulators put it under railroad operating practices, does that have significance and take it outside of the track safety rules and standards? It's later adopted. I don't know why it was later adopted. It may be that they found that they wanted an additional regulation and they added it at that point. I just don't have much more to offer on the subject of why there. You wanted to talk about two other grounds. The first ground is we've got to violate the regulation. One way we didn't violate the regulation is that that person that did the act is the one violating the statute absent respondeat superior liability. There's absolutely no showing on the facts of this case that the person that was flipping the switch and intentionally derailing the train was acting in the course and scope of their employment. They weren't fulfilling the railroad's obligations. Therefore, it doesn't go to the railroad. Two, we just talked about. Three, the common law requires as part of respondeat superior an unexcused violation. The district court, I think, properly held that this was an appropriate excuse. In looking at plaintiff's cases for oral argument here, I went back through some of the ones cited in this brief. I noticed in the O'Donnell against Elgin case, which he states is one of his most opposite cases, that's a Safety Appliance Act case. It would seem to be strict liability. Even in that case, Judge, footnote seven says, even under the Safety Appliance Act, it would appear the Supreme Court would allow a defense for, quote, work of a saboteur, unquote. I think that's exactly what we have here on these facts. The district court, I think, correctly recognized that even if the person responsible was an employee, there's no evidence that person was acting within the course and scope of their employment. Mr. Miller's brief doesn't argue that that conclusion is wrong or that any of the district court's rulings on objections to UP's statements of undisputed material fact were an abuse of discretion. I think at this point, those arguments are waived under this court's precedence. In this statement of material facts, the undisputed material facts, UP identified its evidence as required by the District of Nebraska's local rules. Mr. Miller did not follow the local rules in response, and the district court held in its order, properly referenced material facts in the movement statement are considered admitted unless controverted in the opposing party's motion. This court has backed up district courts on that in Holloway and Rowe. It has stated if no objections were raised in the manner required by the local rules, the district court does not abuse its discretion by admitting the movement's facts. The district court here did not earn its recitation or its consideration of the properly determined undisputed material facts of this case. The derailment was intentionally and unpredictably caused by an unidentified criminal. Even if that criminal was a Union Pacific employee, intentionally derailing the train is not within any UP employee's scope of their employment. I think we discussed the negligence per se claim. I'd like to turn, I have about three minutes left, to the general negligence claim. Reasonable foreseeability of harm is indeed an essential element of FELA negligence. That's from the Gallick case and it goes back to the beginning of FELA or the recent FELA cases. This court said in the Burkhardt case, quoting the McBride case, reasonable foreseeability circumscribes the duties a railroad owes its employees. Where a railroad has no reasonable ground to anticipate that a particular condition would or might result in a mishap or injury, then the railroad's not required to do anything about it. That applies to all the issues raised in plaintiff's general negligence argument. Regarding the misalignment of switch 711 and the switch keys, the cases really show intentional misconduct is not reasonably foreseeable. It must have occurred at the same location in the past to give notice of the condition. That's the Hartell case, a ticket agent shot, even though there was one that was shot a few weeks before five miles away, not foreseeable because it didn't occur at the same location. Mr. Grahams, we shouldn't let the argument go by without you addressing the so-called Rogers standard that's repeated in McBride. Employer negligence played any part, even the slightest. I'm sure you're familiar with that line of cases. It's meant to make it pretty easy for them to get to the jury in these cases. What do you say to that? I think it's not a nice distinction to say that first we have to do something wrong, Judge. I agree that that standard reads proximate cause out of the causation standard, but it does not read the elements of foreseeability out of the duty standard of a general negligence claim, and it also does not alter the other elements of a strict liability claim. It's even the slightest foreseeability then, right? No, sir. That is, I don't think, the import of McBride. I think that foreseeability is still active in a Fela case, and a couple of examples, particularly on the facts of this case. Switches being misaligned. If you look at the Johnson case or the Stafford case, we have trespassers coming onto railroad property and misaligning switches. Held not foreseeable. Now, those are old cases, and those are from proximate cause, but McBride and other cases have moved that prox... element of plaintiff's case, so it's very much alive and very much operates to bar the claim plaintiff is making in this case. There's no evidence here. Prior misconduct of the switch, that the switch key wasn't kept safely and securely, that UP could foresee any switch key or the side of switch 711 being used for criminal misconduct. I see I'm running out of time. Union Pacific respectfully requests that this court affirm the district court's judgment. Thank you. Very well. Thank you for your argument, Mr. Brams. Mr. Kavas, we'll hear from you in rebuttal. Thank you very much. The argument you just heard would truly stand the FBLA Act on its head. What you heard from counsel is a claim by Union Pacific that if it was one of their employees that threw the switch, then they weren't authorized to do that. In other words, if Union Pacific has a rule, and they do, that everyone has to not be negligent, they appear to be arguing that they are exonerated from evidence, from negligence, because they have told their employees don't do bad things. We don't know why that switch was opened. We do not know what equipment may have been placed on that track by a crew and pulled out and the switch not returned to its position. However, that is enough evidence. Certainly under the Harvard Seventh Circuit's decision, it is more than the bones brought through from the bones of a starved pigeon. Now, to go back to the analogy of Safety Appliance Act cases and also Locomotive Inspection Act cases, those are absolute liability cases. This isn't any different. When Congress amended the FBLA Section 54A, it said the violation of a federal safety statute or safety regulation is treated as a violation as a matter of law. We believe under the circumstances here, the regulation was not complied with. There's no dispute it was not aligned for mainline track as it was required to be. Now, the Union Pacific is also arguing, well, there's no reasonable grounds to anticipate anything could happen. Well, they knew something could happen here. Because, in fact, they knew the switch, at least they considered to be obsolete, Mr. Burchell had arranged for and had a 39-foot track panel sitting right next to that switch to be installed to take it out so that you wouldn't have a switch where you don't need one. And that sat there, Mr. Burchell said, because of constraints in resources, they couldn't get six to eight hours of time to replace that switch with a track panel that was sitting a few feet away designed to eliminate any risk associated with this switch. For those reasons and the other arguments in advance, we believe we're entitled to a finding of strict liability on the railroad and a trial before the jury on the issue of causation and damages. Thank you. And on the causation trial that you say you want, do you agree that in light of footnote seven in the O'Donnell case that act of a saboteur intervening would be a valid defense for the railroad? It would be, but they've got to prove it. All right, so you think that would be part of a trial on causation? I believe it would be part of the causation issue that the jury would have to decide. Your position is that you think, well, you think it's their burden to prove no causation or is it your burden to prove how it was caused? Well, in this case here, where you have a violation of a regulation which under 54A imposes strict liability, they are liable. However, if they are able to prove that there was an intervening act of a criminal that caused it, then they have a defense to it. But it would be their burden to prove that. We have established the violation. Okay, thank you for stating your position and thank you for your argument. Thank you both, Mr. Grams, as well. The case will be submitted now and the panel will file an opinion in due course. Thank you both. Yes, counsel are excused and you may disconnect if you wish.